Case number 15-2292, Douglas Weissert v. Carmen Palmer, arguments not to exceed 15 minutes per side, which will be shared by Mr. Thomason and Mr. Ward. And Ms. Jewell, you may proceed to introduce. Good afternoon, your honors. I am here with the University of Tennessee College of Law Appellate Litigation Clinic. I am a supervising attorney and it is my honor to introduce you to the two students who will be arguing today, Alex Thomason and Garrett Ward. We have previously filed a motion for student participation, which this court has granted. We've also filed a motion to split the oral argument, which this court has granted. Both of these students are in good standing in the law school. They are 3Ls. They participated in the briefing process and they are very well prepared here. In terms of the time, we are asking for 12 minutes to make our principal argument and three minutes for rebuttal. Thank you, your honors. So Mr. Thomason, you may proceed. Good afternoon, your honors, and may it please the court. My name is Alex Thomason and I'm here today on behalf of the petitioner in this matter, Douglas Weisert. The state of Michigan deprived Mr. Weisert of his Confrontation Clause rights when he used Eddie Lewis's untested testimonial hearsay statements to secure Mr. Weisert's conviction and to send him to prison for the rest of his life. Mr. Weisert is entitled to habeas relief for this deprivation. Now, the starting point in this analysis, just like in any analysis arising under 2254, is laying out the clearly established Supreme Court precedent. And here, since we're dealing with the Confrontation Clause, the first rule comes from Crawford v. Washington, where the Supreme Court was quite clear that if the state wants to use hearsay statements against a criminal defendant, that hearsay declarant needs to be unavailable and the criminal defendant must have had a prior opportunity to cross-examine that defendant. And what we know from cases dating all the way back to, for instance, Davis v. Alaska, is that in order for that prior opportunity to be constitutionally sufficient, the criminal defendant must have had an opportunity to actually engage the adverse witness in lines of inquiry designed to show that the witness would testify in a manner that demonstrates a bias or a motive to testify against the defendant. We have that rule from Davis v. Alaska, where the court essentially said cross-examination is inadequate when the state applies a law in a way that restricts the criminal defense attorney's ability to pose lines of inquiry designed to show prototypical forms of bias and motive. That's exactly what we have here, because Judge Close, who presided over the preliminary hearing, limited the preliminary hearing testimony simply because it was a preliminary hearing. He applied a state rule that says this is a hearing to show probable cause, and that's it. So I'm not going to let you... Which questions did he prohibit you from asking, or your predecessor? The questions that we've identified that we find to be the most important are on pages 573 through 579 of the preliminary hearing. And one of the questions would have shown that Eddie Lewis, and there was a proffer on the record to this effect, one of the questions would have shown that Eddie Lewis knew Frank, and in fact that he knew that Frank Simpson, who was the person that he ultimately ended up shooting during the robbery... Did your predecessor ask that question? He did get to ask it very briefly. And what's important here is that he asked, for instance, what do you know about Frank Simpson, trying to demonstrate that he knew that Frank had money in his house and that he was a drug dealer. And the prosecutor then objected. And the judge said, no, I'm going to let this go. I'm going to let him ask this question. But then 12 lines later, he asks the question, how much information do you have? And the prosecutor objects again, this is irrelevant, judge. And in response, Mr. Davis, who's the trial attorney, said, no, judge, this is relevant. And the judge says, that's sustained. I'm not going to let you ask questions related to their relationship. You see how important the relationship is? Because if Eddie Lewis knew that Frank had money in his house, that Frank was a drug dealer, and the jury had been able to learn that Eddie Lewis himself was in financial dire straits, it starts to look like maybe Eddie Lewis might have done this on his own, and then therefore would have a motive to testify in a way that shifts the blame to Mr. Weiser. And that's exactly the type of stuff that didn't get to come out during this preliminary hearing. How would your client know that those were answers that could have come out? There is no way to know that for sure. So you're objecting that you weren't allowed to go on some fishing expedition? Perhaps with respect to the first line of inquiry. But with respect to the second, the financial difficulties, it's important to note that earlier, because Eddie Lewis gave a lot of statements to the police before he ever did this preliminary hearing. And one of the statements, he actually told the police that his house was being foreclosed on. Couldn't your client use that? It was very, very limited, Your Honor, and that's sort of the nature of this entire preliminary hearing. There are about 20— Couldn't he use that police report or something like that in his defense? I'm sorry, Your Honor, I don't think I quite heard you. You said it was in a police report that he was losing his house. Couldn't he have used that when he was cross-examining the police officers and brought that out then? Perhaps he could have, but the idea would still be under Crawford that since we have this particular witness whose testimony we're using, that particular witness has to be cross-examined. You're not claiming there was no cross-examination. You're claiming that you didn't get to do all of the cross-examination you would have liked to do. Does Crawford tell you that that's what the standard is? No, Your Honor, what Crawford says is just that there has to be a prior opportunity and that the Confrontation Clause is a procedural right. What's your best case from the United States Supreme Court, because we're here under ENPA, what's your best case that says it's just clear, as a matter of Supreme Court precedent, that we should have been able to do more? The best case on that point goes back to Davis v. Alaska. The line of inquiry in that case was to a juvenile witness, and the juvenile witness had seen, or so he thought, the defendant in the perpetration of an offense. And the line of inquiry was designed to show that maybe that particular juvenile witness might have a motive to testify in a way that was beneficial to the police because he had been brought up on delinquency charges. There's a state law in that case that said you can't impeach a witness with a juvenile delinquency charge. So the manner in which the defense attorney was able to actually ask questions was limited. He got to ask a couple of questions, but when he finally asked, have you ever met with the police before or been interrogated by the police before, the judge said, can't ask that question. You can't ask that question because it gets too close to crossing that line and becoming something that, and I see I'm out of time. Finish your sentence. He said you can't ask that question because if you do, you're going to end up violating the statute. And we have a very similar thing here. We have if you ask these questions, you're going beyond the veil of probable cause, and it's just not what we're here to do. The judge said in the preliminary hearing, this is a preliminary hearing. It does not give you an opportunity to cross-examine like you would at trial. Thank you, Your Honors. Thank you, Counsel. Garrett Ward Good afternoon, Your Honors, and may it please the Court. My name is Garrett Ward, and I'm also here this afternoon on behalf of Mr. Douglas Weiser. Your Honors, in the early morning hours of March 2nd, Mr. Weiser sat for a custodial interrogation with representatives of Michigan law enforcement. During this custodial interrogation, Mr. Weiser made numerous statements, which under clearly established Supreme Court law would qualify as requests for an attorney and therefore demand the immediate cessation of the interview. After none of these requests, did the interview cease, and ultimately this interview and both a transcript and a recording were introduced as evidence against Mr. Weiser at trial and used to secure his conviction. Your Honors, under Davis v. United States, the principal case on this issue, a request qualifies as a request for counsel and demands the cessation of an interview if a reasonable law enforcement official in the same circumstances as the law enforcement official conducting the interview would conclude that the request he has heard is a request for counsel. Isn't there evidence here that the State actually did that in the first interview? The first interview he asked for an attorney? Yes, Your Honor. There was a custodial interview on, I believe, February 28th, and Mr. Weiser made the statement, I think I'd like an attorney, and the State recognized that as a successful request under Davis. At that point, he didn't go on and say, but I'll tell you everything I know. Correct, Your Honor. On February 28th, all he said was, I think I'd like an attorney. Later on, when he said, I think I'd like to have an attorney present, but I'll tell you everything I know, that doesn't turn that into an ambiguity? No, Your Honor. Our position would be that what Mr. Weiser is doing there is stating that he does desire to talk to police on that evening, but with the assistance of counsel. In essence, I'm willing to talk to you, but only with my attorney present. That's the nature of the request he makes there. Isn't a little bit of the problem that the officers, when he was going back and forth about wanting an attorney and saying I want to talk, aren't the officers the ones who said, you've got to tell us you want to talk with us now, or you've got to tell us you don't want to talk with us without an attorney? And ultimately, wasn't the most unequivocal statement from the police in saying, you know, I think you need an attorney? Your Honor, I believe you're referencing a statement that occurs on page 3987 of the record, where law enforcement say to Mr. Weiser, so you want an attorney, and Mr. Weiser responds, I do. So at the occasion where police officers, even by the judgment of the Michigan Court of Criminal Appeals, make an unequivocal reference to an attorney, Mr. Weiser's response is plain and simple. His response is, I do. Well, at that point, if it's at 234, 235, he says, Doug, I think you really need an attorney. I really do. And then at that point there's one other. He says, all right, about these cases I often welcome an attorney. This is the police again. And then they stop and discuss the technical details of how Weiser can get in touch with an attorney, and the interrogation ends. Well, Your Honor, part of the discussion after the request, which is on page ID 3987 of the district court record, part of the discussion after that is technical details about how he should procure an attorney, but not the entirety of it. There's about 12 pages of interview that occur after the exchange, so you want an attorney, I do, sir. Some of that is technical details. However, not all of it is. There are numerous statements from those final 10 pages that the State quotes in its closing argument. Namely, and this is reflected on 3988 and then on appendix page 164, the statement that Mr. Weiser makes as to his thoughts on his ultimate legal culpability in this case. Mr. Weiser makes the statement, I, as well as my co-conspirators, were all screwed. What law enforcement had just told him was that they thought that Eddie Lewis would be found guilty of this crime because of statements he'd made to them. Mr. Weiser says, well, for that matter, I think I'm screwed as well. He's saying, I think I'm going to be found guilty of this crime. And then that statement is ultimately played before the jury. That's referenced in closing argument in the State's last chance to convince the jury. The page ID site is 3987 and 3988. And then the relevant closing argument portion is on page 164 of our appendix. So the State in its final chance to convince the jury of Mr. Weiser's guilt references his own thoughts on his guilt where he says, I feel like I'm screwed. Ultimately, I'm probably going to be convicted of this. That's the essence of what he's saying. And that's very prejudicial evidence to a jury. It's tantamount to a confession, something that, I mean, he doesn't say that I'm responsible for the death of Frank Simpson. He says, I think I will be found guilty. I'm screwed as to guilt on Frank Simpson's death. Just a citation to the record for showing that there was a request without equivocation. Pages 3987 and 3988. And on that occasion, the law enforcement says, so you want an attorney? And he says, I do, sir. And the interview continues for another 12 pages, which is about 20% of that interview. I sit on out of time. Thank you. Thank you, counsel. Good afternoon, Your Honors. Assistant Attorney General Scott Shimkus here on behalf of Respondent Warden Carmen Palmer. This court should affirm the district court's denial of habeas relief in this case for two specific reasons. First, because the U.S. Supreme Court has never held that a criminal defendant who has been afforded an opportunity to cross-examine a witness at a preliminary examination is denied his right to confrontation when that witness becomes unavailable and his preliminary testimony is read to the jury. Second of all, because the Michigan Court of Appeals determination that Mr. Weiser did not unequivocally invoke his right to counsel during his second police interview was not an extreme malfunction of the state criminal justice system. Now, to the first point on the confrontation issue. Counsel for Mr. Weiser identified problems with questions about the relationship that Mr. Lewis had with Mr. Simpson, as well as Mr. Weiser and some discussion of money or having his house foreclosed on. I would note that those specific points were not mentioned in counsel's brief as to what was precluded. But I will also mention that counsel was never categorically prevented from asking about various things in Mr. Lewis's policing reviews or general things about this case. There were no categorical preventions here. Well, what about the statements, I'm not going to let you cross-examine this witness as if it is a trial. I'm not going to let you go off on a fishing expedition. Your Honor. It's a preliminary exam, it's not a trial. Correct. Those conclusions that say we're done here, don't ask any more questions. Not necessarily, Your Honor. As the, not the trial court, but the district court judge pointed out, he said that multiple times because counsel persisted in lines of questioning. Lines of questioning were never categorically barred. Rather, counsel would ask a question, ask a few more questions, and then either receive an objection from the prosecutor or the court would interrupt counsel himself and say, you've already asked about this, this is not a fishing expedition, this is not discovery, move on. And I would note, Your Honor, in looking back at the transcript, the court interrupted counsel himself, the judge interrupted counsel, only nine times in a 68-page cross-examination that lasted over an hour. And only four out of those nine times did the judge prevent counsel from continuing the line of questioning. Specifically, those four instances occurred on pages 126, 130. That's about every five minutes. Pardon? That's about every five minutes. Nine goes into 60, 54 times. So he interrupted him every five minutes. I don't know if it would be that, quite that often, Your Honor. I'm using your times and your numbers. Sure. In terms of timing, it would seem to be a little less frequent than that. For instance, most of the interruptions here really were from the prosecutor. I think the prosecutor's interruptions came far more frequently than the court's interruptions. And in that sense, the court was merely ruling on objections. The court did make the statements that Judge Strange pointed out. But again, counsel was never categorically barred here from asking certain questions. And really what this ultimately comes down to is what Judge Batchelder pointed out, that there is no clearly established Supreme Court precedent here that says the opportunity for cross-examination at the prior proceeding needed to be adequate. Or at least we don't have any definitions or contours for that. All we know is that every time the U.S. Supreme Court has had to deal with this type of issue, they have said that if there was a prior opportunity, and in all of those cases, counsel actually availed themselves of that opportunity, that was sufficient to satisfy the Confrontation Clause. And that's precisely what happened here. Counsel for Mr. Weiser is, as they conceded, are not pointing out that no cross-examination occurred. Their sole contention is that it was not an adequate opportunity. They cite to Davis v. Alaska and Crawford for those propositions. But those cases also can't be looked at in a vacuum. We know the clearly established federal law is that no cross-examination is unlimited. We know that from Delaware v. Fenster. We also know that the court is allowed to control their courtroom and to a large extent control the manner of examination that these attorneys go through with both direct and cross-examination. We know that from Delaware v. Van Aerstel. What your opposing counsel cited to you was the citation to Davis, also in Olden that talked about the exposure of a witness's motivation in testifying as a proper and important function of the constitutionally protected right of cross-examination. That's what your opposing counsel argues was at issue here, that they were not allowed to get into the motivation of Mr. Lewis. Sure, which, as I pointed out in my brief, is simply not true in this case. Counsel was always allowed to get out at least a few lines of his line of questioning. The problem was that he kept, if I may beat the horse, the judge stopped counsel when he started to get repetitive, which we know from Delaware v. Van Aerstel is one of the explicit categories that a judge may stop during the course of an examination. Furthermore, to the point that they prevented counsel from asking Mr. Lewis about any motivation that he may have had for committing this crime himself, that question, there was an interruption from the court there, and then at the end of the discussion between the prosecutor, defense counsel, and the judge, the judge said, okay, go ahead. And then counsel asked several questions about that. That occurred on page ID 921. So without that clearly established federal law, there can be no relief in this case. That case has to be present in order for Mr. Weiser to get habeas relief. And because we don't have that, and we know that from just three years ago, this court's case in Williams v. Baumann, where it was explicitly pointed out that that case law does not exist. Counsel for Mr. Weiser pointed out that, well, in that case, it was simply the issue that the petitioner's counsel didn't point to a case. We have the problem here as well. There is no specific case that says that examination has to be adequate. And even if that case did exist, we know that cross-examination in this case was adequate because counsel went on for 68 pages to cross-examine this witness and was only stopped when he started getting repetitive or started getting into a fishing expedition. Unless your honors have any further questions about the confrontation issue, I will move on to the invocation of counsel claim. For that specific claim, so, Judge Schrenk, you asked opposing counsel for their best example of when there was an unequivocal invocation. They pointed to page ID 3987, 3988. But as with both of these claims, the problem is context. So what I'd like to do is put that in context. The officer said, but, you know, I'm not going to jeopardize this case getting into a wishy-washy thought on the Sixth Amendment and all that. If you want an attorney, and then Mr. Weiser interrupts, I do, sir. The officer continues, and further this, your assistance to this, I think we should stop now, right? And then Mr. Weiser responds, I just want to be straight up with you guys and I want you to believe I am, and I'm telling you, I know you're looking at me like I'm full of shit on him driving, but that was the story I got. As with every other time counsel was mentioned, Mr. Weiser kept on talking. Every mention of I think maybe I should have an attorney came with in the same breath, but I'm willing to tell you everything I know or I want to be honest with you or I don't want you to think I'm lying, something along those lines. That separates this interview from the first interview where he did invoke his right to counsel and that was honored by the officers. But again, the real question here is not whether Mr. Weiser unequivocally invoked his right to counsel. The question is whether the Michigan Court of Appeals determination that he did not unequivocally invoke his right to counsel was unreasonable in light of clearly established Supreme Court precedent. And it was not. That was an entirely reasonable determination based on Mr. Weiser's constant waffling every time an attorney was mentioned. Unless your honors have any further questions, I will conclude. I think we do not. Thank you, counsel. Thank you. And we just ask that you affirm the district court's denial of habeas relief in this case. Thank you. Thank you. Thank you, your honors. Just a couple of brief points on rebuttal. Opposing counsel pointed out the context of the request on page 3987 and 3988 in an attempt to paint this request as equivocal in some manner. Precisely what happened here is the law enforcement official says, I'm worried about the Sixth Amendment. He's referring here to the Fifth Amendment right, not the Sixth Amendment right. But I'm worried about the Sixth Amendment. If you want an attorney, yes, I do, sir. I should stop right now, right? And at that point, the police officer has acknowledged the correct legal course of action. If you want an attorney, I do, then I should stop. But he doesn't. He then essentially asks Mr. Weiser if that's correct. I should stop right now, right? Shouldn't I? And that question prompts Mr. Weiser into speaking. And perhaps what he says after I do, sir, after this follow-up question to an unambiguous request, perhaps that might cast doubt on the equivocal nature of this request. But in Smith v. Illinois, the Supreme Court counseled against that. The point of this – The question was he had equivocated a couple of times, and the question right is yes or no. It's not a question that misleads you. Your Honor, what law enforcement says is that I should stop right now, right? Meaning yes or no. Well, he should stop right now, and he recognizes that based on what Mr. Weiser has said. Mr. Weiser has said, I do, sir. So law enforcement says, so I should stop. Well, he knows he should stop. But didn't he have a – after this guy had equivocated a couple of times to say, is this the time? Your Honor, in an earlier request, Mr. Weiser's response is not I do. Mr. Weiser makes some – admittedly some more long-winded and confusing statements earlier in this interview, but this statement is short and simple. It was not misunderstood by law enforcement here, and that's evidenced by his response being, so I should stop questioning you. The question becomes how does that meet the standard that governs this case? So the standard – Not just what you might think or even what we might think. It's what was appropriate under the AEDBA standard. Yes, Your Honor. So the question then becomes, under Richter, would fair-minded jurists disagree about whether or not the exchange, if you want an attorney, I do, sir, is equivocal or unambiguous versus – and something that a reasonable officer would misunderstand. And not only did the officer here not misunderstand the request, but fair-minded jurists listening to you want an attorney, I do, they would not misunderstand this request either. And for that reason, a writ of habeas should issue. Thank you, Your Honors. Thank you, Counsel. And speaking for this panel, I want to compliment both of you. You have done a fine job representing your client, and we always enjoy having law students appear before us. Very, very nicely done. Thank you. You did an excellent job. You've heard the advocacy here, so you know you're right up there beyond, I think. Thank you, Your Honor. Just remember this. Don't ever let a judge frighten you. I didn't think either one of them even looked sort of – No, no, I don't mean us, because we're not frightening, but a trial judge. You have such a friendly – Remember, if they ever frighten you, give up your ticket. Because that's what you get paid for is to stand up to us people with attractive Irish names who are psychotic, you know. I've done my level best. Thank you, Your Honor. Thank you both. A case will be submitted, and there being nothing further to come.